```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
In the Matter of the Claim of            :            ECF CASE

BETTINA DePIPPO,                         :         04 Civ. 7839 (WCC)

                        Plaintiff,       :

        - against -                      :           **OPINION
                                                     AND ORDER**
KMART CORPORATION, KMART OF NY           :
HOLDINGS, INC. and MICHAEL MORRONE,
                                         :
                        Defendants.
                                         :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

        MARSH & GAUGHRAN LLP
        **Attorneys for Plaintiff**
        50 Main Street, Suite 1000
        White Plains, NY 10606

JAMES R. MARSH, ESQ.

    Of Counsel

        LAW OFFICE OF STEPHEN CIVARDI, P.C.
        **Attorneys for Defendants**
        265 Sunrise Highway, Suite 30
        Rockville Centre, NY 11570

RICHARD C. OBIOL, ESQ.

    Of Counsel

**CONNER, Senior D.J.:**

Plaintiff Bettina DePippo commenced this action against Kmart Corporation and Kmart of NY Holdings, Inc. (collectively, "Kmart"), and Michael Morrone (collectively, the "defendants") alleging that defendants' policies and practices resulted in a violation of plaintiff's constitutional rights by denying her the right to contract to buy goods, services and personal property solely because of her race. Specifically, plaintiff alleges that: (1) defendants' actions deprived her of her right to make and enforce contracts in violation of 42 U.S.C. § 1981; (2) defendants' actions were motivated primarily by intentional racial discrimination in violation of 42 U.S.C. § 1981; (3) defendants' actions constituted malicious prosecution and intentional infliction of emotional distress; and (4) Kmart was negligent in its hiring, recruiting, training, retaining and supervising of Morrone. In the present motion, defendants move for summary judgment arguing that plaintiff's claims are barred by: (1) discharge in bankruptcy; (2) *res judicata*; (3) collateral estoppel; and (4) lack of subject matter and personal jurisdiction because plaintiff failed to file an administrative expense claim with the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") on or before June 20, 2003, the deadline for filing claims against Kmart (the "Bar Date") as set by Kmart's bankruptcy reorganization plan.[1] For the reasons stated hereinafter, defendants' motion for summary judgment is granted in part and denied in part.

---

[1] This deadline was also established in the First Amended Joint Plan of Reorganization of Kmart Corporation and its Affiliated Debtors and Debtors-in-Possession, (the "Reorganization Plan") and the order confirming the Reorganization Plan (the "Confirmation Order").

## BACKGROUND

On December 22, 2002, plaintiff, an African-American woman, was shopping at the Big Kmart Store (the "Store"),[2] located at 399 Tarrytown Road, Greenburgh, New York, when she was stopped by Morrone, the loss prevention manager at the Store, who accused her of shoplifting. (Pl. Mem. Opp. Summ. J. at 1.) Morrone told plaintiff that he observed her shoplifting via a video surveillance camera. (Complt. ¶ 54.) Plaintiff denied any wrong-doing, but Morrone brought her to the store's security office and called the police. (Pl. Mem. Opp. Summ. J. at 1.) Plaintiff was confined in a small room for approximately one hour, during which time she alleges Morrone "verbally harassed and berated" her and "accused her of defrauding Kmart" despite her pleas of innocence. (Complt. ¶¶ 10, 11.) Furthermore, plaintiff alleges that defendants refused her request to view the surveillance tape purporting to show her criminal activity. (*Id.* ¶ 12.) Plaintiff was arrested and charged with petit larceny. (*Id.* ¶¶ 13, 16.)

Plaintiff's criminal trial was pending for one year. After three adjournments on February 25, 2003, April 4, 2003 and June 17, 2003, plaintiff had a bench trial on September 5, 2004. (Pl. Mem. Opp. Summ. J. at 1.) The presiding judge reserved decision following the trial and, on October 3, 2003, found plaintiff not guilty. (Complt. ¶ 20.) The sole evidence against plaintiff in the criminal trial was the uncorroborated testimony of Morrone, leading to plaintiff's claim that defendants procured her prosecution for petit larceny after her arrest. (*Id.* ¶ 16.) The surveillance camera videotape was not produced during discovery or trial; defendants represent that the surveillance tape was destroyed. (*Id.* ¶¶ 21, 22, 23.)

As a result of the above-described incident, on October 1, 2004, plaintiff filed a Complaint

---

[2] The Store is owned and operated by Kmart. (Complt. ¶ 4.)

in the United States District Court for the Southern District of New York, alleging five distinct causes of action: (1) violation of 42 U.S.C. § 1981; (2) malicious prosecution; (3) intentional infliction of emotional distress; (4) negligence; and (5) violation of 42 U.S.C. § 1982. (Pl. Mem. Opp. Summ. J. at 2.) She alleges that she "was forced to disrupt her education to attend her criminal trial" and was required to disclose the charges and pending trial to her work and school associates." (*Id*. ¶¶ 17, 18, 19.)

However, two years earlier, on January 22, 2002, Kmart and certain of its subsidiaries and affiliates each had filed a voluntary petition in the Bankruptcy Court for relief under Chapter 11 of Title XI of the United States Code, 11 U.S.C. § 101, *et seq*., as amended. (Defs. Rule 56.1 Stmt. ¶ 3.) On April 23, 2003, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law and the Confirmation Order under 11 U.S.C. § 1129(a), (b) and FED. R. BANKR. P. 3020, confirming Kmart's Reorganization Plan, which set a June 20, 2003 deadline for creditors to file post-petition administrative claims against Kmart. (*Id*. ¶¶ 5, 6.) The effective date of the Reorganization Plan was May 6, 2003. (Defs. Mem. Supp. Summ. J. at 2.) Furthermore, pursuant to the Bankruptcy Court's Confirmation Order, "Kmart caused Notice of the Confirmation Order, Effective Date and Bar Date to be published in the May 12, 2003 issues of the New York Times, the Wall Street Journal and USA Today." (*Id*. ¶ 7.)

The order specifically provides that: "[a]ny Administrative Claim that is not timely filed and served will be disallowed automatically without the need for any objection from the Debtors." (Defs. Mem. Supp. Summ. J. at 2 (quoting Confirmation Order ¶ 25, § 10.4).) The Confirmation Order explicitly discharged "all claims and interests arising from incidents occurring prior to the Confirmation Date of May 6, 2003." (Defs. Mem. Supp. Summ. J. at 3 (citing Confirmation Order

¶ 11; Reorganization Plan § 12.2).) Moreover, pursuant to its Confirmation Order, the Bankruptcy Court issued "a permanent injunction as to any and all claims for incidents occurring prior to May 6, 2003." (Defs. Mem. Supp. Summ. J. at 3 (citing Confirmation Order ¶ 12; Reorganization Plan § 12.11).)

Defendants maintain that plaintiff failed to file an administrative expense claim prior to the June 20, 2003 deadline and that, to date, she has neither filed a claim with the Bankruptcy Court, nor sought leave to do so. (Defs. Rule 56.1 Stmt. ¶ 8.) Consequently, defendants contend that plaintiff's claims are barred and therefore should be dismissed. Specifically, defendants assert dismissal is required because: (1) her claims were discharged by the Bankruptcy Court; (2) plaintiff's action and each individual claim are barred by the doctrine of *res judicata* and collateral estoppel; (3) this Court lacks subject matter and personal jurisdiction as a result of the permanent injunction provisions of the Bankruptcy Court's Confirmation Order; and (4) plaintiff's claim of intentional infliction of emotional distress is barred by the statute of limitations. (Defs. Mem. Supp. Summ. J. at 5, 7, 8, 9.) Additionally, defendants request that, if this Court declines to dismiss this action on summary judgment, partial summary judgment be granted dismissing any claims as to which there are no material issues of fact.

## DISCUSSION

### I. Standard of Review

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986). A fact is material only if, based

on that fact, a reasonable jury could find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255. However, to defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## II.   Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the basis that plaintiff's claims were discharged by the Bankruptcy Court due to plaintiff's failure to file an administrative expense claim request prior to the Bar Date. (Defs. Mem. Supp. Summ. J. at 5.) Plaintiff, however, contends that she did not receive adequate notice of the Confirmation Order and, therefore, is not bound by it. (Pl. Mem. Opp. Summ. J. at 4.)

### A.   Notice

It is well-established that once confirmed, a debtor's reorganization plan binds the debtor and all creditors, regardless of whether the creditor has accepted the plan, provided that the creditor has "been given notice sufficient to satisfy due process." *See Daewoo Int'l (Am.) Corp. Creditor Trust*

*v. SSTS Am. Corp.*, No. 02 Civ. 9629, 2003 WL 21355214, at *3 (S.D.N.Y. June 11, 2003) (citing 11 U.S.C. § 1141(a)). Where notice satisfies due process, "an order confirming a reorganization plan operates to discharge all unsecured debts and liabilities, even those of tort victims who were unaware of the debtor's bankruptcy." *In re U.S.H. Corp.*, 223 B.R. 654, 657 (Bankr. S.D.N.Y. 1998) (citing 11 U.S.C. §§ 1141 and 524; *Brown v. Seaman Furniture Co., Inc.*, 171 B.R. 26, 27 (E.D. Pa. 1994)).

Whether a creditor received adequate notice is a fact-specific inquiry and depends on the facts and circumstances of each case. *See Daewoo Int'l*, 2003 WL 21355214, at *3; *see also In re U.S.H. Corp.*, 223 B.R. at 658 (citing *In re Eagle Bus. Mfg. Inc.*, 62 F.3d 730, 735 (5th Cir. 1995)). Nonetheless, "[d]ue process is met if notice is 'reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response.'" *Daewoo Int'l*, 2003 WL 21355214, at *3 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")). Therefore, unless a creditor is given reasonable notice of the bankruptcy proceeding and relevant bar dates, its claim cannot be constitutionally discharged. *See In re U.S.H. Corp.*, 223 B.R. at 658.

In evaluating whether notice is "reasonably" given, "[t]he proper inquiry . . . is whether the party giving notice acted reasonably in selecting means likely to inform persons affected, not whether each person actually received notice." *In re Best Prods. Co.*, 140 B.R. 353, 357-58 (Bankr. S.D.N.Y. 1992) (citing *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989)). Thus, what constitutes "reasonable notice" principally depends on the status of the parties

6

and whether the creditor is a "known" creditor or an "unknown" creditor. While actual notice is required if the creditor is a "known" creditor, constructive notice is sufficient where a creditor is "unknown." *See City of New York v. New York N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953).

It is well-settled that when a creditor is "unknown" to the debtor publication notice of the claims bar date is adequate constructive notice sufficient to satisfy due process requirements because, "in the case of persons missing or unknown, employment of an indirect and even probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane*, 339 U.S. at 317; *see also New York N.H.*, 344 U.S. at 296 (concluding publication of the bar claims date satisfies requirements of due process with respect to providing notice to unknown creditors); *In re XO Comm., Inc.,* 301 B.R. 782, 792-93 (Bankr. S.D.N.Y. 2003) (same); *In re U.S.H. Corp.*, 223 B.R. at 659 (holding publication notice "more than sufficient to satisfy due process requirements" and that if plaintiffs were "'unknown' creditors at the time of the Bar Order," their claims are barred) (collecting cases).

As above-mentioned, Kmart entered into bankruptcy on January 22, 2002. Plaintiff's claims arise from an incident that occurred December 22, 2002. The parties do not dispute that plaintiff's claims are covered by the Bankruptcy Court's Confirmation Order. Rather, plaintiff maintains she is not bound by the Confirmation Order or its corresponding Bar Date because she did not receive adequate notice of Kmart's Chapter 11 proceedings, the Confirmation Order or the filing deadline. Consequently, whether plaintiff's claims are discharged will turn on whether plaintiff is deemed a "known" or "unknown" creditor, because if she is an "unknown" creditor, publication notice, which was provided by defendants, is sufficient to satisfy due process and discharge her claims.

### 1. "Known" Versus "Unknown" Creditor

The Supreme Court has explained that a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988). "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'" *In re U.S.H. Corp.*, 223 B.R. at 659 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)). However, "[r]easonable diligence does not require 'impracticable and extended searches . . . in the name of due process.'" *In re U.S.H. Corp.*, 223 B.R. at 659 (quoting *Mullane*, 339 U.S. at 317). Rather, "[t]he requisite search instead focuses on the debtor's own books and records"; a debtor is not required to go beyond "a careful examination of these documents." *Id.*

Conversely, a creditor is "unknown" if their "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane*, 339 U.S. at 317. "Although a debtor is obligated to ascertain reasonably the identity of its creditors by reviewing its own books and records, 'a debtor is not required to search elsewhere for those who might have been injured.'" *In re U.S.H. Corp.*, 223 B.R. at 659 (quoting *Texaco Inc. v. Sanders (In re Texaco, Inc.)*, 182 B.R. 937, 955 (Bankr. S.D.N.Y. 1995) (quoting *In re Best Prods.*, 140 B.R. at 358)); *see also In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 445 (Bankr. S.D.N.Y. 1991) (noting that "it is not the debtor's duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it"). In other words, "[d]ebtors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions [because] such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates." *In re U.S.H. Corp.*,

223 B.R. at 659 (citing *Chemtron Corp. v. Jones*, 72 F.3d 341, 348 (3d Cir. 1995)).

### 2. **Plaintiff's Status**

In the case at bar, plaintiff asserts that she is not bound by Kmart's bankruptcy discharge because she was not afforded notice, formal or otherwise, of the Chapter 11 proceedings and resulting Confirmation Order. However, plaintiff ignores the fact that she is clearly an "unknown" creditor: her interests were both future and conjectural. Defendants cannot be expected to know that the charge of shoplifting against plaintiff would result in a lawsuit against defendants and potential liability for Kmart. *See In re Drexel Burnham Lambert Group Inc.*, 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993) (noting that "[a] known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it"). Furthermore, prior to the institution of the present lawsuit, which did not occur until after plaintiff's claims were discharged in bankruptcy, plaintiff never communicated any intention of making a claim against defendants and defendants were unaware plaintiff intended making such a claim. *See id.* (noting that "[t]ypically, a known creditor may have engaged in some communication with a debtor concerning the existence of the creditor's claim").

Plaintiff's reliance on *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir. 1984), and *In re Carematrix Corp.*, 306 B.R. 478 (Bankr. D. Del. 2004), is misplaced because the plaintiffs in those cases were "known" creditors or were never afforded notice of any kind, actual or constructive. Here, plaintiff is an "unknown" creditor and notice of the bankruptcy proceedings and associated bar dates was published.

Accordingly, we conclude that plaintiff's due process rights were satisfied by publication of

notice in the New York Times, Wall Street Journal and USA Today.³

B. **Insurance Provision**

Plaintiff alternatively maintains that the Confirmation Order does not enjoin her claims because defendants have insurance that covers "some or all of the wrongful acts" alleged by plaintiff and asserts that the Confirmation Order, by its very terms and conditions, does "not diminish or impair the enforceability of any such insurance policy" with respect to her claims. (Pl. Mem. Opp. Summ. J. at 8, 9.) In making this assertion, plaintiff relies on paragraph 51 of the Confirmation Order, which states: "Personal Injury and Other Litigation Claims. Notwithstanding any provision of the Plan or its modifications to the contrary, the confirmation and effectuation of the Plan as modified shall not release, reduce or discharge any surety of the Debtors from such surety's obligations to satisfy any portion of any claim arising from a civil money judgment." (*Id*. at 8-9 (quoting Confirmation Order ¶ 51).) Defendants assert that Kmart is self-insured with regard to claims of the type asserted by plaintiff and that, therefore, plaintiff's argument regarding insurance coverage is without merit. (Rock Aff. ¶ 5.) Kmart maintains a self-insured retention of two million dollars per claim. (*Id.* at ¶ 3.)

Certain criteria have been established "to insure that the fresh start objective of the Bankruptcy Code is respected when litigation against the debtor is allowed to continue[:] (1) the plaintiff can maintain the action against the debtor only when it is necessary to establish liability against a third party; (2) the plaintiff can maintain the action against the debtor only if the debtor

---

³ Although a failure to file a timely claim with the Bankruptcy Court may be excused where a plaintiff establishes "excusable neglect," plaintiff has not alleged, nor provided any evidence, that her failure to file a timely claim was the result of "excusable neglect."

10

bears none of the expense of the defense; and (3) most important, the plaintiff may not execute on any judgment he may obtain against the debtor, either against the debtor personally, or against his assets." *Bank of India v. Trendi Sportswear, Inc.*, No. 89 Civ. 5996, 2002 WL 84631, at *5 (S.D.N.Y. Jan. 17, 2002) (citing *In re Catania*, 94 B.R. 250, 253 (Bankr. D. Mass. 1989)). In *Greiner v. Columbia Gas Transmission Corp.* the debtor had additional insurance coverage from an outside carrier beyond an initial $250,000 self-insured retention. *In re Columbia Gas Transmission*, 219 B.R. 716, 720 (S.D. W. Va. 1998) *cf. In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 281 B.R. 200, 210 (Bankr. S.D.N.Y. 2002) (finding that a debtor's retrocessionaires who had a contractual obligation to assist the debtor in paying claims in a timely manner did not provide liability insurance and, therefore, the plaintiff could not proceed against a debtor on liability). The court held there was no insurance to cover the plaintiff's claim because the discharge in bankruptcy prevented any use of the initial $250,000. *In re Columbia Gas Transmission*, 219 B.R. at 720. Allowing the claim would require dipping into bankruptcy assets in order to pay the costs of defending the lawsuit which would be contrary to the Bankruptcy Code's fresh start policy. *Id.* at 721.

Kmart does not maintain primary liability insurance. (Rock Aff. ¶ 3.) Its only insurance provides coverage above a two-million-dollar self-insured retention. (*Id.*) Therefore, because Kmart's debt has been discharged in bankruptcy, there is no money to cover plaintiff's claim. Moreover, if the action against Kmart were permitted to proceed, it would have to pay litigation costs, which is contrary to the fresh start policy of the Bankruptcy Code.

### C. <u>Claims Against Defendant Morrone</u>

Lastly, plaintiff contends that she is suing Morrone individually and maintains that

11

defendants "have not moved for summary judgment on his behalf nor do they specifically indicate how [Kmart's] bankruptcy effects his liability in this matter." (Pl. Mem. Opp. Summ. J. at 3.) According to plaintiff, Morrone's liability

> is addressed by Article 1.34 of the [Reorganization Plan] dated February 25, 2003 which refers to "Continuing Indemnification Rights" as ". . . any Indemnification Rights held by any Indemnitee on account of events occurring on or after the Petition Date . . . ." According to Article 12.9 of the [Reorganization Plan], ". . . Continuing Indemnification Rights . . . shall remain in full force and effect to the fullest extent allowed by law or contract on and after the Effective Date and shall not be modified, reduced, discharged, or otherwise affected in any way by the Chapter 11 Cases."

(*Id*. (quoting Reorganization Plan).) Plaintiff maintains that as a result of these sections, even if plaintiff's claims against Kmart are discharged, the claims against Morrone are not.

Defendants respond by noting that it was made clear in the moving papers that they were moving for summary judgment on behalf of all defendants, including Morrone, and that plaintiff is well-aware of that fact as evidenced by plaintiff's repeated reference to "*defendants'* motion for summary judgment." (Defs. Reply Mem. Supp. Summ. J. at 1 (emphasis added).) Moreover, defendants assert that plaintiff's argument concerning Morrone is flawed, and that the claims against Morrone are also discharged by bankruptcy, especially when the manner in which plaintiff framed her claims against Morrone—as arising within the scope of his employment and in furtherance of his employer's interests—is taken into account. (*Id*.) Defendants highlight the fact that plaintiff admits that Morrone is owed indemnification by Kmart if found liable, and that the Complaint "alleges solely that [d]efendant Morrone was at all times acting within the scope of his employment with Kmart Corporation and advancing Kmart's interests." (*Id*. (citing Complt. ¶¶ 3, 96, 116).) Additionally, defendants call attention to the discharge provisions that apply to "'any of [the Debtors] assets' and as in 'complete satisfaction, discharge, and release' of any claim." (*Id*. (quoting

12

Reorganization Plan § 12.2).)

The Reorganization Plan provides that "[t]he Confirmation Order shall be a judicial determination of the discharge of all Claims against the Interests in the Debtors." (Reorganization Plan § 12.2.) However, section 12.10 of the Reorganization Plan explicitly states:

> Notwithstanding anything in this Plan to the contrary, no provision of this Plan or the Confirmation Order, including, without limitation, any exculpation, indemnification or release provision, shall modify, release, or otherwise limit the liability of . . . (ii) any Person not specifically released hereunder, including, without limitation, any Person that is a co-obligor or joint tortfeasor of a Released Party or that is otherwise liable under theories of vicarious or other derivative liability, . . . ; <u>provided</u>, <u>however</u>, that the Debtors and Reorganized Debtors shall not provide indemnification on account of . . . (ii) above.

(Emphasis added.)

Although plaintiff alleges that Morrone was, at all times, acting within the scope of his employment and in furtherance of Kmart's interests, this does not mean that the claims asserted against him were discharged. The Reorganization Plan and Confirmation Order unequivocally state that Kmart's bankruptcy shall not affect or limit the liability of a joint tortfeasor. This is directly applicable to Morrone. Accordingly, defendants' motion for summary judgment is denied with respect to the claims asserted against Morrone; however, we will consider whether partial summary judgment is appropriate with respect to the claims asserted against Morrone.

### 1. **Intentional Infliction of Emotional Distress**

Defendants maintain that plaintiff's third cause of action, alleging intentional infliction of emotional distress, must be dismissed because it is barred by the applicable statute of limitations.

(Defs. Mem. Supp. Summ. J. at 9.) Plaintiff's third cause of action occurred on December 22, 2002, and the Complaint was filed on October 1, 2004.

Under New York law, the statute of limitations with respect to intentional infliction of emotional distress is one year. *See* N.Y. C.P.L.R. § 215; *Holmes v. Lorch*, 329 F. Supp. 2d 516, 523 (S.D.N.Y. 2004); *Kwarren v. Am. Airlines*, 303 A.D.2d 722, 757 N.Y.S.2d 105 (2d Dep't 2003) (citing N.Y. C.P.L.R. § 215; *Kourkoumelis v. Arnel*, 238 A.D.2d 313, 655 N.Y.S.2d 653 (2d Dep't 1997)). Since more than one year elapsed between the incident from which the current action arose and the filing of plaintiff's Complaint, and plaintiff has not opposed the dismissal of this claim, plaintiff's third cause of action alleging intentional infliction of emotional distress is dismissed.

## CONCLUSION

For all of the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part. The motion is granted with respect to plaintiff's claims asserted against Kmart Corporation and Kmart of NY Holdings, Inc., which are hereby dismissed with prejudice. Summary judgment is denied with respect to the claims asserted against Michael Morrone with the exception of the third cause of action alleging intentional infliction of emotional distress, which is dismissed with prejudice.

SO ORDERED.

Dated: White Plains, New York
November 14, 2005

*William C. Conner*
Sr. United States District Judge